UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | |
|---|---|
| **JH KASPAR OIL CO.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-3723** |
| **NEWTON& ASSOCIATES, LLC ET AL** | **SECTION: "S" (1)** |

### ORDER AND REASONS

The motion to dismiss or alternatively motion for summary judgment on certain claims asserted by the plaintiff, or alternatively motion *in limine* to exclude evidence in support of certain claims alleged by plaintiff (Doc. #38) is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

This is a dispute between a company and a collection agency which, pursuant to a contract, was collecting on stale accounts belonging to the company.

Plaintiff JH Kaspar Oil Company ("Kaspar"), a Wyoming corporation, contracted with a collection agency to collect on stale accounts receivable.[1]  Made defendants are the agency and William J. Newton who is the principal for each of the defendant companies.  William Newton

---

[1] The collection agency operated under various names:  Last Chance CDC, LLC; Newton & Associates; Sonji, LLC; and Tramada, LLC.  All have been made defendants, except for Tramada, LLC.

testified that his companies are no longer operating and have no employees.  Plaintiff is also suing William Newton personally and his companies for damages;[2] all are Louisiana defendants.

Plaintiff is alleging that, without authorization, defendants collected monies belonging to plaintiff and that defendants still hold $ 96,877 from one of plaintiff's accounts and $ 1,241.23 from another account.  Plaintiff urges that defendants' unauthorized collection activities have caused

---

[2]The facts are detailed, and listed chronologically as follows:

| Date | Event |
|---|---|
| June, 2006 | Mike Hindrichs of "Last Chance" contacts Sheri Snodgrass, a Kaspar accounting employee, to solicit his company's collection agency's services. |
| June 26, 2006 | Snodgrass requests a quote from Last Chance and faxes to Hindrichs a list of Kapsar accounts. |
| June 29, 2006 | Hinrichs' letter to Snodgrass states that Last Chance could begin collecting on the accounts for a 25% contingency rate and a 10% cancellation fee. |
| July 5, 2006 | Newton sends a letter to Ensign Oil, stating that Newton's company was conducting an audit for Kaspar and asking that Ensign to send all monies owed to Kaspar to Newton. |
| July 10, 2006 | Snodgrass signs the Last Chance letter which confirmed placement with Newton, and faxes to Hindrichs a cover page with a list of accounts that she wanted him to begin collection activity on.  Snodgrass was not authorized to sign the letter, and Ensign Oil was not on the list. |
| July 11, 2006 | Snodgrass faxes letter to Hindrichs, saying that five of the accounts had been recalled. |
| July 17, 2006 | Snodgrass again faxes letter to Hindrichs confirming which accounts should be acted on (the list included 17 accounts, including one of the recalled accounts).  Snodgrass advises Hindrichs that Rocky Mountain Pipeline complained of receiving a collection call even though the company was not on the list.  Snodgrass reiterates to Last Chance to remove any accounts not referred to them from their lists.  Newton says that they did this immediately. |
| July 18, 2006 | Snodgrass tells superiors of the communications between herself and the defendants, and sends letter to defendants to cease and desist all collection activities. |
| July 25, 2006 | Snodgrass sends fax to "Client Relation Manager" at Newton, informing them of a complaint from Nicole Von Heeder who received a call from a collection agency though this was a recalled account as of July 11. |
| SOMETIME | Newton collects $ 74,281.27 from Ensign Oil and $ 1,241.23 from Jerry and Elizabeth Woods. |
| July 31, 2006 | Total collections made by Newton approximates $ 153,489.73. |
| Sept., 2006 | Coface North America Holding Company purchases assets of Newton and Tramada, with Newton and Tramada retaining liabilities.  Newton is the president of Coface, the CEO of Newton and the sole owner of Last Chance. |
| Sept. 29, 2006 | Newton sends check to plaintiff in the amount of $ 33,483.54, after deducting 25% commission from all collected accounts and 10% cancellation fee on the cancelled accounts.  Check states that endorsement is a waiver of any further liability; plaintiff does not accept check. |
| Oct. 3, 2006 | Newton & Associates changes name to Tramada, LLC. |
| Nov. 2006 | "Last Chance" sends letter to plaintiff regarding collection efforts on plaintiff's accounts. |
| July 13, 2007 | Suit is filed. |

Kaspar to suffer damage to its reputation, to lose money and to risk potential liability.

Invoking diversity and federal question jurisdiction under the Fair Debt Collection Act, 15 U.S.C. §1692, plaintiff seeks a declaratory judgment that the contract at issue was void, and a permanent injunction ordering defendants to return all funds held by them, halting all further communications between defendants and Kaspar's customers, and indemnifying Kaspar against any and all claims that may arise as a result of their acts.  Further, plaintiff also seek compensation for expenses and financial losses due to defendants' conduct, and attorney's fees for bringing this action and state claims of violations of unfair trade practices laws, fraud, mistake, conversion, breach of contract, and negligence.

## ANALYSIS

Defendants move to dismiss under 12(b)(6) all claims against William Newton individually; all claims for violations of the Fair Debt Collection Practices Act (FDCPA); and, all claim of violations of the Wyoming state licensure laws.  Alternatively, defendants seek summary judgment on these claims because no evidence supports these claims.  In the further alternative, defendants urge that the motion be turned into a motion in limine to preclude plaintiff at trial from introducing evidence of an "alter ego" theory of liability, and from presenting evidence that defendants allegedly violated the FDCPA and/or Wyoming state licensing laws at trial.

*Motion to Dismiss under Rule 12*

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.[3] "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[4]

Defendants argue that the plaintiff has no standing to assert violations of the FDCPA. The avowed purpose of the FDCPA is to "protect consumers against debt collection practices."[5] Further, the Act defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."[6] Kapsar is not a "consumer," as defined by the FDCPA. Further, plaintiff provides no support that the FDCPA is intended to protect commercial entities, such as Kaspar.[7]

Defendants' motion to dismiss is GRANTED with respect to plaintiff's claims under the FDCPA and plaintiff's FDCPA claims are dismissed. However, in all other respects, Defendant's motion to dismiss plaintiff's claims against William Newton, and plaintiff's claims regarding the

---

[3] *In re Katrina Canal Breaches Litigation*, 2007 WL 2200004 (5th Cir.2007) (*quoting Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)).

[4] *Id.* at 1965.

[5] 15 U.S. §1692(e).

[6] 15 U.S.C.§1692a(3).

[7] Plaintiff's reliance upon *Wright v. Finance Service of Norwalk, Inc.,* 22 F.3d 647, 651 (6th Cir. 1994) for the proposition that the FDCPA has been given broad interpretation to include third parties such as Kaspar is not persuasive. In *Wright*, the court concluded that an executrix of a debtor had standing under the FDCPA, a situation clearly distinguishable from the matter at hand. *See Wright*, 22 F.3d at 647.

Wyoming state licensure laws is DENIED.[8]

*Motion for Summary Judgment*

Summary judgment is appropriate if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[9]  Although the court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial.[10]

The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.[11]  The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to defeat a properly supported motion for summary judgment.[12]  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.[13]  Further, if the opposing party bears the burden of proof

---

[8] Defendants further suggest that this court does not have subject matter jurisdiction because plaintiff lacks the requisite amount in controversy.  Diversity jurisdiction exists if the parties are diverse and the amount in controversy is satisfied.  *Ellison Steel, Inc. v. Greystar Const. LP*, 199 Fed. Appx. 324, 2006 WL 2381924 (5th Cir. 2006); 28 U.S.C. §1332.  Further, generally, the amount claimed by plaintiff controls is the claim is apparently made in good faith.  *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).  Paragraph 30 of the Amended Complaint alleges that without authorization, Defendant Newton holds $96,877.00 from Ensign Oil, and $1,241.23 from a Mr. and Mrs. Woods.  Defendants argue that the true amount in controversy is only $42,038.02 because they had previously offered Plaintiff a check in the amount of $33,483.54, which the plaintiff declined.  However, the check came with a hook in that it also stated that endorsement constituted a waiver of all claims by plaintiff against Newton.  Thus, the amount in controversy exceeds $75,000 based on the claims of Paragraph 20 alone.

[9] Fed.R.Civ.P. (56); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554-55 (1986).

[10] *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir.1998).

[11] *Id*.

[12] *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).

[13] *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir.1993).

at trial, the moving party does not have to submit evidentiary documents to support its motion, but need only point out the absence of evidence supporting the non-movant's case.[14]

Defendants argue that plaintiff has not alleged sufficient facts to maintain a cause of action against William Newton and has not produced any evidence that would support piercing the corporate veil. However, plaintiff submits the deposition transcript of William Newton whose testimony raises numerous questions of material fact so as to preclude summary judgment on the issue of whether the operations of the defendants expose Newton to personal liability. Thus, the motion for summary judgment is DENIED insofar as the claims against Newton personally.

*Motion In Limine*

Defendants alternatively move *in limine* for an order precluding plaintiff from putting on evidence that would support an "alter ego" theory of liability and from presenting evidence relative to Wyoming licensure laws because they are irrelevant.[15] Questions of fact exist which preclude summary judgment in defendants' favor as to whether an "alter ego" theory of liability applies. Consequently, the motion *in limine* is DENIED as to evidence of an "alter ago" is DENIED without prejudice to reurge the motion at a later time.

Plaintiff, who is a Wyoming corporation argues that the Wyoming licensure laws are relevant because when defendants were soliciting plaintiff's business, defendants purported to be licensed under Wyoming law. Defendants' motion *in limine* is DENIED as to Wyoming licensure laws, but without prejudice to reurge the motion at a later time.

---

[14]*Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).

[15]Defendants argue that plaintiff is trying to assert a private cause of action under Wyoming licensing laws; however, plaintiff denies that this is so.

New Orleans, Louisiana, this  25th  day of March, 2008.

                                                              **MARY ANN VIAL LEMMON**
                                            **UNITED STATES DISTRICT JUDGE**